IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| SANDY BYRD, *et al.*, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) | CASE NO. 2:18-CV-122-WKW |
|  | ) | [WO] |
| NANCY BUCKNER, in her personal and individual capacity and in her official capacity as Commissioner of the Alabama Department of Human Resources, *et al.*, | ) ) ) ) ) |  |
|  | ) |  |
| Defendants. | ) |  |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiffs Sandy Byrd, Jonathan Ponstein, Leeann Ponstein, A.P., Monica Hardman, and Matthew Lawrence allege that Alabama Department of Human Resources ("DHR") officials deprived them of procedural due process in violation of 42 U.S.C. § 1983 and committed several state law torts. Plaintiffs' claims arise out of DHR placing their names on a Central Registry that catalogues the outcome of child abuse and neglect allegations, disclosing that information from the Central Registry to third parties, and failing to provide Plaintiffs with due process hearings to challenge the information on the Central Registry. Before the court is Plaintiffs' motion for a preliminary injunction, moving the court to compel DHR officials

Nancy Buckner, Kim Mashego, and Carla Emmons to remove Plaintiffs' name from the registry until Plaintiffs have a due process hearing. (Doc. # 2.) This motion is due to be denied.

## II. JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367. Personal jurisdiction and venue are not contested.

## III. STANDARD OF REVIEW

A party seeking a preliminary injunction must establish four elements: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that its own injury outweighs the injury to the nonmovant; and (4) that the injunction would not disserve the public interest." *Thompson v. Alabama*, No. 2:16-cv-783, 2017 WL 3223915, at *4 (M.D. Ala. July 28, 2017) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant establishes the burden of persuasion as to the four prerequisites." *Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009). "The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Powers v. Sec'y Fla. Dep't of Corr.*, 691 F. App'x. 581, 583 (11th Cir. 2017) (quoting *Ne. Fla. Chapter of Ass'n*

*of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1284 (11th Cir. 1990)).

Where, as here, the plaintiff seeks a mandatory preliminary injunction, the burden of persuasion is even higher. *See Thompson*, 2017 WL 3223915, at *4. A mandatory injunction "goes well beyond simply maintaining the status quo[,] is particularly disfavored and should not be issued unless the facts and law clearly favor the moving party." *Powers*, 691 F. App'x. at 583 (quoting *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)). "Only in rare instances is the issuance of a mandatory preliminary injunction proper." *Harris v. Wilters*, 596 F.2d 678, 680 (5th Cir. 1979).

## IV.  LEGAL CONTEXT

With certain exceptions not applicable in this case, DHR is the state agency in Alabama responsible for investigation of all reports of suspected child abuse and neglect. Ala. Code § 26-14-6.1. Pursuant to its statutory authority, DHR has propounded regulations and established procedures for investigation and disposition of child abuse reports and for review, recording, and disclosure of the outcome of child abuse investigations. Ala. Code § 26-14-12; Ala. Admin. Code r. 660-5-34-.01, *et seq*.

"Once a report of suspected child abuse/neglect has been received, it must be investigated." Ala. Admin. Code r. 660-5-34-.04. Upon receipt of a report of child

abuse or neglect, the state or county DHR promptly begins an investigation, which includes research into previous reports, home visits, interviews with the child and custodial parents, and so forth. Ala. Code § 26-14-7; Ala. Admin. Code r. 660-5-34-.05. After completing the investigation, the investigating DHR social worker reaches a disposition as to whether the child experienced abuse or neglect and the identity of the person responsible for the abuse or neglect. Ala. Admin. Code r. 660-5-34-.07. The worker assigns one of the following dispositions to the report of abuse and to the person alleged to be responsible for the abuse: (1) "Indicated," which means that "a preponderance of the credible evidence . . . and the professional judgment of the worker indicate that abuse/neglect has occurred;" (2) "Unable to Complete;" or (3) "Not Indicated," which means that "a preponderance of the credible evidence and professional judgment does not substantiate that abuse/neglect has occurred." *Id*.; *see also* Ala. Code § 26-14-8 (defining "indicated" and "not indicated").

The county DHR submits a complete written report of the investigation and disposition to DHR's statewide Central Registry for reports of child abuse and neglect. Ala. Code § 26-14-7(d); Ala. Code § 26-14-8; Ala. Admin. Code r. 660-5-34-.09. All persons who have been assigned an "indicated" disposition are given an opportunity to disagree with DHR's findings "through either a CA/N hearing or an administrative record review." Ala. Admin. Code r. 660-5-34-.08 (1)-(4). Some

4

individuals qualify for a CA/N hearing based on the nature of their employment; the rest qualify only for administrative record review. Ala. Admin. Code r. 660-5-34-.08(4). The accused is afforded ten DHR working days from receipt of the notice to submit a written request for either a CA/N hearing or an administrative record review, whichever of the two is available to that person. Ala. Admin. Code r. 660-5-34-.08(4). If DHR receives no written request for review by the end of the ten-day period, the accused is considered to have waived review, and the "indicated" disposition is entered on the Central Registry. *Id*. Once an "indicated" disposition is entered on the Central Registry, it is confidential, but it may be released under certain circumstances to employers, prospective employers, licensing and certifying agencies, *etc*. Ala. Code § 26-14-8; Ala. Admin. Code r. 660-5-34-.08(4); Ala. Admin. Code r. 660-5-34-.09.

Only certain persons — for example, those certified to care for children, such as teachers and educators, and those employed by certified child care facilities, such as day care workers—are entitled to a CA/N hearing.[1] A CA/N hearing is "an internal investigatory hearing that is fact finding in nature and designed to elicit the facts in an atmosphere that allows the person responsible for the abuse/neglect to contest the evidence presented against him [or her]." Ala. Admin. Code r. 660-5-

---

[1] It appears that only Plaintiff Byrd was potentially entitled to a CA/N hearing.

34-.08(6); *see also* Ala. Code § 26-14-7.1 (providing due process rights for certain persons (such as educators) who have come under DHR investigation for child abuse or neglect).  DHR bears the burden of persuasion at the CA/N hearing.  Ala. Code § 26-14-7.1; Ala. Admin. Code r. 660-5-34-.08(6).

For the majority of Alabama citizens (everyone who is not a teacher, day care worker, or other person who falls within the narrow qualifications for entitlement to a CA/N hearing), only an administrative record review is available to challenge an "indicated" disposition.[2]  Ala. Admin. Code r. 660-5-34-.08(3)-(4).  Unlike a CA/N hearing, which is "fact finding in nature" and allows the accused to directly challenge the "indicated" disposition using evidence outside the administrative record, an administrative record review is limited to consideration of whether the DHR's own administrative record "contains sufficient documentation based on a preponderance of credible evidence to support the 'indicated' disposition of child abuse/neglect." Ala. Admin. Code r. 660-5-34-.08(3).  "Administrative record reviews are conducted by [DHR] staff who are not involved with the case."  Ala. Admin. Code r. 660-5-34-.08(7).  "The [administrative record] reviewers have the authority to overturn the dispositional finding of the worker and supervisor, *and their decision is final*." Ala. Admin. Code r. 660-5-34-.08(7) (emphasis added).

---

[2] Plaintiffs Jonathan Ponstein, Leeann Ponstein, A.P, Monica Hardman, and Matthew Lawrence only qualified for an administrative record review to challenge their "indicated" status.

6

After the conclusion of the CA/N hearing or administrative record review, there are no further procedures available for challenging the merits of an "indicated" disposition.

## V. FACTS

Plaintiff **Sandy Byrd** is a municipal employee who represents that she interacts with, and provides services to, children and adults on a regular basis. She asserts that Shelby County DHR received a report suggesting that Plaintiff Byrd abused and/or neglected eight teenage children. She alleges that she received written notification of the preliminary finding of "indicated" that also informed her that she had the opportunity to defend herself at a CA/N hearing. Through her attorney, Plaintiff Byrd provided written notice of her acceptance of the opportunity to defend herself and requested a hearing be scheduled. That request was denied.

Plaintiffs **Jonathan Ponstein** and **Leeann Ponstein** are parents to minor children. They assert that Shelby County DHR received a report that they abused and/or neglected their minor daughter. At the conclusion of the investigation, they each received a notification of their indicated status and the opportunity to participate in an administrative record review. Through their attorney, they each requested a hearing. Those requests were ignored or denied. Plaintiffs represent that they intend to be involved in their children's lives by volunteering with organizations that provide academic and extra-curricular opportunities to minors.

7

They argue that continued listing on the Central Registry could limit their right to volunteer, and imply that their statuses as indicated offenders could be disclosed if they applied to volunteer at these organizations.

Plaintiff **A.P.** is a minor child suing through his father, Jonathan Ponstein. He asserts that DHR received a report suggesting that he abused and/or neglected his sister. At the conclusion of the investigation, Plaintiff A.P. received a notification of his indicated status and the opportunity to participate in an administrative record review. Acting through his attorney, A.P. made a written request to DHR to proceed with a hearing. That request was either ignored or denied. A.P. continues to be listed on the Central Registry. Plaintiff A.P. wishes one day to have children, but, if he does, he argues that disclosure of the "indicated" status could prevent him from volunteering and participating in activities the way other parents do. In addition, Plaintiff A.P. is concerned that disclosure will hinder his ability to obtain employment and engage in an occupation.

Plaintiff **Monica Hardman** is a mother to two minor children. She asserts that Shelby County DHR received a report suggesting that she abused and/or neglected her son. At the conclusion of the investigation, Plaintiff received notification of her indicated status and the opportunity to participate in an administrative record review. Plaintiff, acting through her attorney, made a written request for a hearing. That request was ignored or denied.

8

Plaintiff **Matthew Lawrence** represents that Bibb County DHR received a report suggesting that he abused and/or neglected a child. At the conclusion of the investigation, the DHR made a preliminary determination that the report was "indicated." Plaintiff Lawrence does not state whether he was provided a written notice of his status or his right to a review, but he asserts that he made a written request, through his attorney, that he be given the opportunity to defend the indicated disposition. That request was denied. Plaintiff Lawrence is not a parent to any minor children. He represents, however, that he intends to be involved in the lives of children in his family by volunteering with organizations that provide academic and extra-curricular opportunities to minors. Lawrence also represents that he intends to seek future employment in both child-related and non-child related areas.

Defendant **Nancy Buckner** is the Commissioner of the Alabama Department of Human Resources, and she supervises the operations of DHR. Plaintiffs allege that she is responsible for establishing policies and procedures and ensuring that DHR operates in conformity with the law.

Defendant **Kim Mashego** is the Director of the Shelby County DHR and supervises the operation of the Shelby County DHR. Plaintiffs allege that she is responsible for establishing procedures and ensuring that the Shelby County DHR operates in conformity with the law.

Defendant **Carla Emmons** is the Director of the Bibb County DHR and

supervises the operation of the Bibb County DHR. Plaintiffs allege that she is responsible for establishing procedures and ensuring that the Bibb County DHR is in conformity with the law.

## VI. DISCUSSION

Plaintiffs have not met their burden for obtaining a mandatory preliminary injunction. They have failed to demonstrate that any of the preliminary injunction factors weigh in their favor.

**A. Plaintiffs fail to demonstrate that they will be irreparably harmed while litigation is pending.**

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm *before a decision on the merits can be rendered.*" *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d. Cir. 1985) (emphasis added); *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004). Courts have repeatedly recognized that irreparable injury is "the sine qua non of injunctive relief." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000); *Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). Accordingly, the court addresses this element first.

Plaintiffs contend they all have a desire to work or volunteer with their own children or other children. They argue that their listing on the Central Registry directly affects their ability to volunteer and work "as they see fit and as they might

choose." (Doc. # 3, at 4.) Plaintiffs further state that the listing is a threat not only to their reputations, but also to their employment prospects in violation of their constitutionally protected liberty interest. Plaintiff A.P. also indicates that he has concerns about future employment opportunities, and his ability to parent children he may have in the future.

The Eleventh Circuit has recognized that "the harm considered by the district court is necessarily confined to that which might occur in the interval between ruling on the preliminary injunction and trial on the merits." *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1134 (11th Cir. 2005) (vacating the injunction issued by the lower court). "The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat; it may not be used to eliminate a possibility of a remote future injury or a future invasion of rights." *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982) (quoting *Holiday Inns of Am., Inc. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969)). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Here, Plaintiffs' assertions about potential harms are too remote to satisfy the burden for a mandatory preliminary injunction. Plaintiff indicate they "might

11

choose" to work or volunteer at organizations that could come to learn of their indicated status. Plaintiffs appear to suggest that they would like the possibility to pursue such opportunities "as they see fit." It is not clear from Plaintiffs' motion that any plaintiff intends to pursue such opportunities during the pendency of litigation.

Moreover, Plaintiffs do not include any dates in their Complaint. Accordingly, the court cannot evaluate whether Plaintiffs promptly sought an injunction. Under Eleventh Circuit law, "[a] delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). Plaintiffs failed to provide the court with sufficient facts to fully evaluate their claim of irreparable harm.

Plaintiffs bear a heavy burden of persuasion at this stage in the proceedings. Their claims that their presence on the Central Registry could harm their ability to pursue employment and volunteer prospects "as they see fit," do not meet the requirement that they demonstrate *likely* harm *during the pendency of litigation.* Plaintiffs offer little argument that such harm could not be adequately compensated during the course of litigation. Plaintiffs' failure to demonstrate irreparable harm, standing alone, is dispositive. *Siegel*, 234 F.3d at 1179 ("Significantly, even if Plaintiffs establish a likelihood of success on the merits, the absence of irreparable

12

injury would, standing along, make preliminary injunctive relief improper"). Accordingly, Plaintiffs are not entitled to a mandatory preliminary injunction.

**B.     Plaintiffs have not shown a likelihood of success on the merits entitling them to the requested relief.**

While Plaintiffs' failure to demonstrate irreparable harm during the pendency of litigation is dispositive, Plaintiffs also have not met their burden of demonstrating a substantial likelihood of success on the merits entitling them to the requested relief.

The Eleventh Amendment prevents a federal court from issuing an injunction against state officials solely to require them to adhere to state law. *Pennhurst State Sch. & Hosp. v. Holderman*, 465 U.S. 89, 106-07 (1987) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs officials on how to conform their conduct to state law."). In what appears to be an attempt to avoid the implications of *Pennhurst*, Plaintiffs argue that their "right to a due process hearing is found in the State and Federal Constitutions and not only in State Statutes or Administrative Rules and Regulations." (Doc. # 3, at 5.) In a similar case where the plaintiffs sought a declaratory judgment that the defendants provide them with a hearing before placing their names on the Central Registry, this court found that the plaintiffs had not "demonstrated a constitutional right to have their names withheld from the Central Registry until the conclusion of a hearing." *Collier v. Buckner*, 303 F. Supp. 3d 1232, 1262 (M.D. Ala. 2018) (citing *Campbell v. Pierce Cty., Ga. ex rel. Bd. of Comm'rs of Pierce Cty.*, 741 F.2d 1342, 1345 (11th Cir. 1984)). While a

13

pre-deprivation hearing may be required where there is a property interest at stake, "[i]n cases where a liberty interest arising from reputational damage is implicated, the courts have followed a different procedural course." *Campbell*, 741 F.2d at 1344. Instead, the hearing need not take place "prior to . . . the publication of related information adverse to [the plaintiff's] interests." *Id*.

Plaintiffs have not demonstrated a right under the federal constitution to a hearing prior to their placement on the Central Registry. To the extent that Plaintiffs may avail themselves of other remedies or may have additional claims under the federal constitution, those arguments are absent from the briefing. The court is limited to determining whether the liberty interest protected by the federal constitution entitles Plaintiffs to the requested relief. Even if state officials violated state laws, this court lacks the power to issue an injunction to compel compliance. Indeed, the federal courts must be cautious in enjoining state court action to "avoid [] unseemly conflict between two sovereigns." *Martin v. Creasy*, 360 U.S. 219, 224 (1959). Accordingly, Plaintiffs fail to demonstrate a substantial likelihood of success on the merits entitling them to the requested relief.

**C.    Plaintiffs have not shown that the threatened injury to them outweighs the harm an injunction may cause Defendants.**

Plaintiffs argue that Defendants will not be harmed if the injunction issues because the issuance of the injunction would not overturn the preliminary determination. Instead, Plaintiffs argue that the injunction would prevent DHR from

14

disclosing the indicated dispositions until after the due process hearing. Defendants observe that they would be forced to expend significant resources removing Plaintiffs' names from the Registry.

Contrary to Plaintiffs' position, the requested preliminary injunction, if granted, would alter the status quo. Defendants would have to divert resources away from their essential functions to fulfill Plaintiffs' request.

Moreover, the harm to Defendants from this court's meddling in the administration of a state agency is not inconsequential, particularly here, where Plaintiffs ask a federal court to oversee Defendants' implementation of state law. The Seventh Circuit's observations on the principles of federalism are fitting:

> The value of decentralized government is recognized more clearly today than it has been for decades. This recognition, born of experience, enables us (and not only us) to see that federal judicial decrees that bristle with interpretive difficulties and invite protracted federal judicial supervision of function that the Constitution assigns to state and local governments are to be reserved for extreme cases of demonstrated noncompliance with milder measures. They are last resorts, not first.

*Ass'n of Cmty. Organizations for Reform Now (Acorn) v. Edgar*, 56 F.3d 791, 798 (7th Cir. 1995).

Plaintiffs fail to demonstrate that they would suffer harm during the pendency of litigation and that the threatened injury to them outweighs the harm that this injunction would cause Defendants.

15

**D.   Plaintiffs have not demonstrated that a preliminary injunction would serve the public interest.**

Finally, the public interest militates against the granting of the preliminary injunction motion. Plaintiffs argue that the public "has no interest in allowing the State to defame citizens and to unlawfully prevent citizens from engaging in employment and volunteer opportunities." (Doc. # 3, at 6.) Plaintiffs have made no arguments regarding their innocence — they only object that their due process rights were not respected. Defendants rightly observe that the public has a strong interest in the investigation of child abuse and neglect allegations and maintenance of records of such investigations. Additionally, the diversion of state resource to fulfilling Plaintiffs' requests, when balanced against the multitude of hurdles Plaintiffs face as to the other elements for obtaining injunctive relief, weighs against granting preliminary injunctive relief. *See Thompson*, 2017 WL 3223915, at *16.

### VII.   CONCLUSION

Based upon careful consideration of Plaintiffs' motion for preliminary injunction, Defendants' opposition, and the record, it is ORDERED that the motion (Doc. # 2) is DENIED.

DONE this 6th day of September, 2018.

                                           /s/ W. Keith Watkins
                                   CHIEF UNITED STATES DISTRICT JUDGE