FILED
2020 Apr-28  PM 03:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| CORTNEY MONTREZ GADSDEN, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.:  2:17-cv-01743-ACA |
| CITY OF BIRMINGHAM, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

On the evening of October 13, 2015, Birmingham police officer Zachary Osborne tased Plaintiff Cortney Montrez Gadsden when Mr. Gadsden got out of his car during a traffic stop.  Almost simultaneously, Birmingham police officer Bradley Cole shot Mr. Gadsden five times.  Mr. Gadsden is now a paraplegic.

Mr. Gadsden filed this lawsuit under 42 U.S.C. § 1983, alleging that Defendant City of Birmingham (the "City") violated his constitutional right to be free from excessive force.  Mr. Gadsden also claims that the City is responsible under the doctrine of respondeat superior for the officers' actions that allegedly violate state law.

This matter is before the court on the City's motion for summary judgment as to the remaining claims in this action—Mr. Gadsden's § 1983 claim and state law respondeat superior claim against the City.  (Doc. 26).[1]

Also before the court is Mr. Gadsden's response to the court's order to show cause why his complaint states a § 1983 claim against the City.   (Doc. 44; *see also* Doc. 43).

Having considered Mr. Gadsden's arguments in response to the show cause order, the court **DISMISSES** any freestanding § 1983 procedural due process claim against the City, to the extent one is pleaded in the complaint.  And the court construes Mr. Gadsden's complaint as asserting a § 1983 excessive force claim against the City based on a violation of both his Fourth Amendment rights and his Fourteenth Amendment substantive due process rights.

Because Mr. Gadsden has not presented any evidence that the City has a policy or custom of officers using excessive force or that it has failed to adequately train or supervise its officers in the use of force, the court **GRANTS** the City's

---

[1] Mr. Gadsden originally named Officer Osborne and Officer Cole as defendants. Mr. Gadsden did not serve Officer Osborne or Officer Cole with a copy of the summons and complaint, and he did not respond to the court's order to show cause why the court should not dismiss his claims against the officers pursuant to Federal Rule of Civil Procedure 4(m).  (*See* Docs. 3, 6, 10). Therefore, the court dismissed without prejudice Mr. Gadsden's claims against the officers.  (Doc. 10).   After the City filed a motion for summary judgment, Mr. Gadsden filed a motion for reconsideration of the court's order dismissing his claims against Officer Cole.  (Doc. 31).  The court denied the motion for reconsideration.  (Doc. 39).  Therefore, the only remaining claims are those against the City.

motion for summary judgment and **ENTERS JUDGMENT** in favor of the City on

Mr. Gadsden's § 1983 claim.

Because the court enters judgment as a matter of law on the only claim over

which it has original jurisdiction, the court **DECLINES** to exercise supplemental

jurisdiction over Mr. Gadsden's state law respondeat superior claim against the City

and **DISMISSES** the claim **WITHOUT PREJUDICE** pursuant to 28 U.S.C. §

1367(c)(3).

## I.   ORDER TO SHOW CAUSE AND RESPONSE

To understand what claims and legal theories remain before the court for

consideration, the court must as a preliminary matter review the procedural history

of this case, including the court's order to show cause why Mr. Gadsden's complaint

states a federal § 1983 claim against the City and Mr. Gadsden's response.

On October 13, 2017, Mr. Gadsden filed his complaint asserting federal 42

U.S.C. § 1983 claims and state law claims against the City, Officer Cole, and Officer

Osborne.  (Doc. 1).  The complaint alleges that during a traffic stop, Officer Cole

shot Mr. Gadsden and Officer Osborne tased him "without cause or provocation"

while Mr. Gadsden reached for his cell phone.  (Doc. 1 at ¶ 12; *see id.* at ¶¶ 8–9).

Count One is titled "42 U.S.C. § 1983 Claim Against Defendant City of

Birmingham."  (*Id.* at 4).  Count Two is titled "Excessive Use of Force."  (*Id.* at 5).

Count Three is titled "Battery."  (Doc. 1 at 6).  Count Four is titled "Intentional

Infliction of Emotional Distress." (*Id.*).  Count Five is titled "Respondeat Superior Against Defendant City of Birmingham." (*Id.* at 7).  Eight months after the initial filing, the case was transferred to the undersigned.  (Doc. 16).

Mr. Gadsden's complaint is an example of what the Eleventh Circuit has repeatedly condemned as a "shotgun pleading." *See Estate of David Bass v. Regions Bank*, 947 F.3d 1352, 1356 n.3 (11th Cir. 2020); *see also Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015).  First, each count incorporates by reference every preceding paragraph.  (Doc. 1 at ¶¶ 16, 23, 27, 30, 34); *see Weiland*, 792 F.3d at 1321.  Second, with the exception of Mr. Gadsden's § 1983 claim and respondeat superior claim against the City (Counts One and Five), the complaint appears to assert multiple counts against multiple defendants without specifying the defendant against whom the claim is asserted.  (Doc. 1 at ¶¶ 23–33); *see Weiland*, 792 F.3d at 1323.

In addition to the problems inherent with a shotgun pleading issue, the complaint is also ambiguous.  For example, in Count One, Mr. Gadsden invokes the Fourteenth Amendment's due process clause as the basis for his § 1983 claim against the City.  (Doc. 1 at ¶ 17).  But Count One does not indicate whether Mr. Gadsden asserts a procedural or substantive due process claim against the City, or both.  And, the factual basis of the claim shifts.  (*Compare* Doc. 1 at ¶ 17 (asserting liability because he was shot and tased "without just cause" and a failure to intervene); *id.* at

4

¶ 18 (asserting liability for a failure to investigate and discipline); *with id.* at ¶ 19 (officers' actions "are violations of City policy")).

The court did not fully appreciate the shortcomings of Mr. Gadsden's complaint until its review of the summary judgment briefing. The City titled the relevant portion of its brief in support of summary judgment as "Due Process Claim." (Doc. 27 at 13). However, the substance of the City's argument is based on § 1983 law in the context of Fourth Amendment excessive force claims, not Fourteenth Amendment due process claims. (Doc. 27 at 13–14). Mr. Gadsden's opposition to the City's motion likewise cites case law and makes arguments regarding his Fourth Amendment rights. (Doc. 41 at 23–28). But Mr. Gadsden did not explicitly plead a § 1983 claim against the City based on violations of the Fourth Amendment; he pleaded a § 1983 claim against the City based on violations of the Fourteenth Amendment. (Doc. 1 at ¶ 17).

After reviewing the parties' briefs, the court entered an order asking Mr. Gadsden to show cause why the court should not dismiss his § 1983 due process claim against the City for failure to state a claim. (Doc. 43). The court's order outlined the elements of a § 1983 procedural due process claim and why the court believed that the facts as pleaded in the complaint did not state such a claim. (*Id.* at 3–5).

Mr. Gadsden filed a response to the court's show cause order, advancing three substantive arguments.  First, Mr. Gadsden states that the incorporation doctrine required him to plead his excessive force claim pursuant to the Fourteenth Amendment because the Fourth Amendment applies to state actors through the Fourteenth Amendment.  (Doc. 44 at 7–8).  Second, Mr. Gadsden suggests that his complaint asserts an excessive force claim against the City pursuant to both the Fourth Amendment's reasonableness standard and Fourteenth Amendment's substantive due process rubric.  (*Id.* at 9–13).  Third, Mr. Gadsden argues that his complaint sufficiently pleads a § 1983 procedural due process claim.  (*Id.* at 13–14).

Based on Mr. Gadsden's first and second argument, the court concludes that Mr. Gadsden intended to plead his excessive force claim against the City based on violations of both his Fourth and Fourteenth Amendment rights (although this is entirely unclear from the complaint itself).  In his complaint, Mr. Gadsden alleges that the officers shot and tased him during a traffic stop.  (Doc. 1 at ¶ 8).  Therefore, when the court initially reviewed the record and issued its order to show cause why the complaint states a procedural due process claim, it had not occurred to the court (and likely not to the City either) that Mr. Gadsden intended to advance a substantive due process claim because the facts alleged in his complaint show that he was seized during a traffic stop.  Moreover, because Count One (which expressly invokes due process protections) is specifically directed at the City but Count Two (titled

"Excessive Force") is not, it appeared to the court that Mr. Gadsden did not assert his excessive force claim against the City.  Nevertheless, and consistent with the parties' summary judgment briefing which indicates that the parties understood that Mr. Gadsden advanced such a claim,  the court construes Mr. Gadsden's complaint as asserting a § 1983 excessive force claim against the City based on both the Fourth Amendment and the Fourteenth Amendment.  However, as explained in greater detail below, whether advanced as a Fourth or Fourteenth Amendment excessive force claim, Mr. Gadsden's § 1983 claim against the City does not survive summary judgment.

With respect to Mr. Gadsden's argument that his complaint sufficiently pleads a procedural due process § 1983 claim, the court disagrees.  To the extent Mr. Gadsden's complaint asserts a procedural due process claim in Count One, for the reasons outlined in the court's February 3, 2020 order to show cause (doc. 43 at 3–5), the court dismisses any freestanding procedural due process claim for failure to state a claim.  *See Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1248 (11th Cir. 2015) (district court may *sua sponte* dismiss a claim as long as the court provide the plaintiff with notice and an opportunity to respond).[2]

---

[2] In his response to the order to show cause, Mr. Gadsden argues that the City has waived any argument regarding dismissal of a § 1983 claim.  (Doc. 44 at 6–7).  Mr. Gadsden misunderstands the basis for dismissal of any purported § 1983 procedural due process claim.  It is the court that *sua sponte* challenged whether the complaint stated a claim for relief under the Fourteenth Amendment's due process clause.  (Doc. 44).  And having given Mr. Gadsden notice

Accordingly, as it pertains to Mr. Gadsden's § 1983 claim against the City, the court finds that Mr. Gadsden asserts both a Fourth Amendment excessive force claim and a Fourteenth Amendment substantive due process excessive force claim, but the complaint fails to state a § 1983 Fourteenth Amendment procedural due process claim.

With that stated, and with the understanding that Mr. Gadsden asserts a § 1983 excessive force claim against the city based on alleged violations of both the Fourth and Fourteenth Amendments, the court turns to the City's motion for summary judgment.

## II.   MOTION FOR SUMMARY JUDGMENT

### 1.   Background

On a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted).

On October 13, 2015, Birmingham Police Department Officers Zachary Osborne and Bradley Cole were patrolling neighborhood streets.  (Doc. 24-1 at 5; Doc. 24-2 at 4–5).  Officer Osborne was driving his police car, and Officer Cole was

---

and an opportunity to respond, the court dismisses the claim consistent with its authority under Eleventh Circuit precedent.

in the passenger seat.  (Doc. 24-1 at 5).  The officers started following Mr. Gadsden because he was speeding in a residential area, and the car's bright lights were on. (Doc. 24-1 at 4–5; Doc. 24-2 at 5).  Mr. Gadsden ran a stop sign, and Officer Osborne turned on his emergency lights.  (Doc. 24-1 at 5; Doc. 24-6 at 10).

Mr. Gadsden's car stopped abruptly.  (Doc. 24-1 at 5; Doc. 24-2 at 5).  Mr. Gadsden opened the driver door and removed his seatbelt.  (Doc. 24-1 at 5–6; Doc. 24-6 at 10–11; Doc. 24-7 at 13).  Officers Osborne and Cole testified that they saw Mr. Gadsden move toward the center console or passenger side of the car, and both were concerned that Mr. Gadsden might have been reaching for a weapon.  (Doc. 24-6 at 13; Doc. 24-7 at 13–14).

Officer Cole got out of the police car first.  (Doc. 24-1 at 6; Doc. 24-7 at 13–14).  He told Mr. Gadsden to "stay in the car."  (Doc. 24-7 at 14; *see also* Doc. 24-7 at 19).  Mr. Gadsden claims that he did not hear any warnings.  (Doc. 24-3 at 13). Officer Cole testified that once he was near the front of Mr. Gadsden's car, he saw a gun in Mr. Gadsden's hand through the passenger side window.  (Doc. 24-7 at 14).

Officer Osborne approached Mr. Gadsden's car from the driver's side, and unlike Officer Cole, he could not see what Mr. Gadsden had in his hands.  (Doc. 24-1 at 6; Doc. 24-6 at 15).  As the officers got closer to Mr. Gadsden's car, Mr. Gadsden got out.  (Doc. 24-3 at 13; Doc. 24-1 at 6; Doc. 24-2 at 6; Doc. 24-6 at 15).  Officer Osborne feared that Mr. Gadsden was attempting to flee, so he tased Mr. Gadsden

twice.  (Doc. 24-1 at 6; Doc. 24-6 at 12).  Simultaneously, Officer Cole shot Mr. Gadsden five times.  (Doc. 24-2 at 6; Doc. 24-7 at 17).  Mr. Gadsden fell to the ground.  (Doc. 24-1 at 6; Doc. 24-2 at 6).

About ninety seconds after Mr. Gadsden was tased and shot, Officer Cole is heard on body camera video asking Mr. Gadsden "where's the gun?"  (Doc. 24-1, Ex. A (Osborne Body Camera Video) at 1:17; *see also* Doc. 24-7 at 19).  Mr. Gadsden tells Officer Cole, "there's no gun."  (Doc. 24-1, Ex. A (Osborne Body Camera Video) at 1:18).  Officer Cole says to Mr. Gadsden, "you had it in your hands."  (Doc. 24-1, Ex. A (Osborne Body Camera Video) at 1:19).  Mr. Gadsden says again, "I didn't have no gun. . . . It was a cell phone."  (Doc. 24-1, Ex. A (Osborne Body Camera Video) at 1:20-1:24).

Officer Cole walks closer to Mr. Gadsden and tells him that he saw a silver gun with a bronze hand grip.  (Doc. 24-1, Ex. A (Osborne Body Camera Video) at 1:32-1:35; *see also* Doc. 24-7 at 14).  Mr. Gadsden responds that all he had was a cell phone.  (Doc. 24-1, Ex. A (Osborne Body Camera Video) at 1:36-1:50).

Officer Cole then found a gun on the ground near Mr. Gadsden.  (Doc. 24-1, Ex. A (Osborne Body Camera Video) at 1:04-1:10; Doc. 24-7 at 20; Doc. 24-6 at 18, 37–40).  Officer Cole testified that the gun he found was the one he saw in Mr. Gadsden's hand.  (Doc. 24-7 at 20).  Mr. Gadsden claims that the gun Officer Cole

found was already in the yard nearby and did not come out of his car.  (Doc. 24-1, Ex. A (Osborne Body Camera Video) at 7:18-7:23).

The tasing and shooting left Mr. Gadsden paralyzed from the waist down. (Doc. 24-3 at 29–30).  One bullet remains lodged in his spine, and another remains lodged in his shoulder.  (Doc. 24-3 at 30).

The Alabama Law Enforcement Agency and the Jefferson County, Alabama District Attorney's Office investigated the incident and determined that no criminal charges would be filed against Officer Cole for shooting Mr. Gadsden.  (Doc. 24-5 at 7, 9).  The Birmingham Police Department Shooting Review Committee, by a vote of 6-0, concluded that Officer Cole's shooting was consistent with department policy.  (Doc. 24-5 at 7, 11–16).

That policy is titled "Use of Force" and is part of the Birmingham Police Department's Rules and Regulations.  (Doc. 24-4 at 22).  The policy states that officers "are authorized to use only that level of force that is objectively reasonable to bring an incident under control." (*Id.* at 31).  According to the policy, "objectively reasonable" means that "[i]n determining the necessity for force and the appropriate level of force, officers shall evaluate each situation in light of known circumstances, including but not limited to the seriousness of the crime, the level of threat or resistance presented by the subject and the danger to the community." (*Id.* at 23). The policy permits lethal force when an officer "reasonably believes" that the

officer's life or that of another "is in jeopardy and that lethal force is immediately necessary" to preserve the officer's or the other's life or "prevent serious bodily injury." (Doc. 24-4 at 31). The policy also provides that "[j]ustification for the use of lethal force must be limited to what reasonably appears to be the facts known or perceived by an officer at the time he decides to use such force." (*Id.* at 33).

All Birmingham police officers, including Officers Osborne and Cole received instruction on the policy during their initial training at the Birmingham Police Academy. (Doc. 24-4 at 33; Doc. 24-5 at 6). All officers receive ongoing instruction on the policy during annual firearms qualifications training. (Doc. 24-1 at 3; Doc. 24-2 at 3; Doc. 24-4 at 33).

## II.    DISCUSSION

In deciding a motion for summary judgment, the court must determine whether, accepting the evidence in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Hamilton*, 680 F.3d at 1318.

The City moves for summary judgment on Mr. Gadsden's § 1983 claim on the basis that Mr. Gadsden cannot establish that any municipal policy or custom caused the alleged constitutional injury. (Doc. 27 at 13). The court agrees.

The United States Supreme Court has imposed strict limitations on municipal liability. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Whatever

the constitutional basis of the claim, a city cannot be liable under § 1983 through the doctrine of respondeat superior. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).  Instead, to hold a city liable for the actions of its officers, a plaintiff must show that the city had a custom or policy of excessive force or inadequate training or supervision. *Gold*, 151 F.3d at 1350–51.

"A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). "A custom is a practice that is so settled and permanent that it takes on the force of law." *Id.*  Mr. Gadsden has not presented evidence creating a genuine issue of material fact concerning whether the City has a policy or custom of excessive force.

First, Mr. Gadsden argues that because state agencies and the Birmingham Police Department Shooting Review Committee found that the shooting was within City policy then "the City of Birmingham has a policy that does not prohibit the use of deadly force on an unarmed fleeing suspect." (Doc. 41 at 24).  The plain language of the written policy speaks for itself and does not allow officers to use deadly force on unarmed fleeing suspects. (*See generally* Doc. 24-4 at 22–39).  The policy allows officers to "use only that level of force that is objectively reasonable to bring an incident under control" based on a number of enumerated factors, including whether a suspect possess a weapon. (Doc. 24-4 at 31; *see also id.* at 32).

Second, Mr. Gadsden claims that "there is no evidence that indicates that the gun allegedly found at the scene belonged" to him, and because he testified that he did not have a gun in his hand, the court must accept that testimony and draw all reasonable inferences in his favor.  (Doc. 41 at 25; *id.* at 26).  Even accepting Mr. Gadsden's version of events, and assuming he did not exit his car with gun, whether Mr. Gadsden was actually armed is irrelevant.  The dispositive issue is whether, consistent with the "Use of Force" policy, Officers Osborne and Cole used lethal force based on "what reasonably appear[ed] to be the facts known or perceived by" them when they decided to use lethal force.  (Doc. 24-4 at 33).  Therefore, the question is not whether Mr. Gadsden did, in fact, have a gun in his hand.  The question is whether Officer Cole reasonably believed that to be the case, which according to the "Use of Force" policy means did Officer Cole "have knowledge of facts which . . . would cause a reasonable person, knowing the same facts, to reasonably conclude the same thing.  (*See* Doc. 24-4 at 23) (defining "reasonably believes" for purposes of the policy).

Mr. Gadsden's claim that he did not have a gun does not create a triable issue of fact about whether the City's "Use of Force" policy itself is unconstitutional or whether the City has an unconstitutional custom of allowing its officers to use excessive force.

Third, Mr. Gadsden claims that the City adopted an unconstitutional "Use of Force" policy that allows officers to determine use of force "not by any objective standard but by the officer's perceived abilities, gender and experience." (Doc. 41 at 27). The plain language of the policy belies Mr. Gadsden' position. Again, the policy expressly states that officers "are authorized to use only that level of force that is objectively reasonable to bring an incident under control." (Doc. 24-4 at 31). And the policy explains that "objectively reasonable" means officers "evaluate each situation in light of known circumstances, including but not limited to the seriousness of the crime, the level of threat or resistance presented by the subject and the danger to the community." (Doc. 24-4 at 23). The policy also outlines eight "subject factors" and six "officer factors" that officers must evaluate when determining the appropriate level of control required for a particular situation. (Doc. 24-4 at 32). An officer's perceived abilities, gender, and experience are not among those factors.

Fourth, Mr. Gadsden argues that "indicative of the unconstitutional policies of the City of Birmingham Police Department and every agency that investigated this shooting and found it to be within said policy is the failure to investigate the conduct of these officers." (Doc. 41 at 32). Mr. Gadsden claims that the City is liable because a sergeant who arrived on the scene shortly after the incident told Officer Cole not to "give a lot of information on camera." (Doc. 41 at 32) (citing

Doc. 24-2, Ex. B (Cole Body Camera Video) at 6:28-6:30).    According to Mr. Gadsden, "the conduct of the Officers' supervisor and the ratification by silence of the subsequent investigatory bodies constitutes a deliberate indifference of the City of Birmingham and the conduct may therefore be considered a policy or custom actionable under § 1983."  (Doc. 41 at 33).

Section 1983 municipal liability "on the basis of ratification exists when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Matthews v. Columbia Cty.*, 294 F.3d 1294, 1297 (11th Cir. 2002).  Mr. Gadsden's attempt to hold the City liable based on the supervising officer's comments to Officer Cole, the state agency's investigations, and the Birmingham Police Department Shooting Review Committee's actions fails.

Even if the supervisor's comment to Officer Cole not to say too much on camera at the scene somehow bears on whether the City has an unconstitutional policy or custom of excessive force, Mr. Gadsden presents no evidence that the supervising officer had final policymaking authority.  Accordingly, Mr. Gadsden cannot establish municipal liability through the supervising officer's discussion with Officer Cole.

The same is true with respect to the state agencies that investigated the incident.  Mr. Gadsden presents no evidence that the state agencies are final

policymakers for the City of Birmingham. Therefore, the actions of those agencies do not support a ratification theory of liability.

This leaves the action of the Birmingham Police Department Shooting Review Committee which found that Officer Cole acted within policy guidelines when he shot Mr. Gadsden. Once again, Mr. Gadsden cites no evidence that the Shooting Review Committee has final policymaking authority. But assuming that the Shooting Review Committee does have such authority, the City can only be liable if "policymakers have had the opportunity to review subordinates' decisions before they become final." *Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160, 1174 (11th Cir. 2001), *vacated on other grounds by Thomas v. Roberts*, 536 U.S. 953 (2003), *opinion reinstated by* 323 F.3d 950 (11th Cir. 2003). Here, the Shooting Review Committee did not examine Officer Cole's actions until after the shooting took place. Therefore, Officer Cole's decision to shoot Mr. Gadsden is not a "final" decision by City policymakers. *See Thomas*, 261 F.3d at 1174.

Because Mr. Gadsden has not presented evidence that the City has a policy or custom of using excessive force, to survive summary judgment, he must show that the City failed to adequately train or supervise its officers in the use of force.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Oklahoma City v. Tuttle,* 47 U.S. 808, 822–823 (1985)). To establish

municipal liability, a plaintiff must prove that the City's failure to train was "not simply negligent, but was taken with 'deliberate indifference' as to its known or obvious consequences." *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 398 (1997) (citing *Canton v. Harris*, 489 U.S. 378, 388 (1989)); *Canton*, 489 U.S. at 389 ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."). To survive summary judgment on that claim, a plaintiff must present some evidence that "the municipality knew of a need to train or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Knight through Kerr v. Miami-Dade Cty.*, 856 F.3d 795, 820 (11th Cir. 2017) (quotation marks omitted). A plaintiff can do so in two ways.

The first approach requires evidence that the City was aware that a pattern of violations existed but failed to provide adequate training. *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009). The second approach requires evidence that the likelihood of a constitutional violation is so high that the City was on notice of the need for training and that the City failed to provide that training. *Lewis*, 561 F.3d at 1351–52.

Mr. Gadsden advances no argument on either front in response to the City's motion for summary judgment. He cites no evidence of a widespread practice of

using excessive force or that the City failed to provide adequate training.  In addition, he cites no evidence showing that the likelihood of a constitutional violation was so high that the City would have been on notice of the need for use of force training above and beyond what it already provided to its officers.  Therefore, Mr. Gadsden has not met his burden.

The court is not unsympathetic to Mr. Gadsden.  He remains permanently injured as a result of an encounter with police that all parties agree unfolded within a matter of seconds.  Those seconds changed lives, including Mr. Gadsden's, forever.  Unfortunately for Mr. Gadsden, the law does not entitle him to relief on his federal claim against the remaining party to this lawsuit.

## III.   CONCLUSION

For the reasons explained above, the court **DISMISSES** any freestanding § 1983 procedural due process claim for failure to state a claim.

The court **GRANTS** the City's motion for summary judgment on Mr. Gadsden's § 1983 claim.  The court **ENTERS JUDGMENT** in favor the City and against Mr. Gadsden on that claim.

There is no longer an independent basis for jurisdiction over Mr. Gadsden's state law respondeat superior claim against the City.  Therefore, pursuant to 28 U.S.C. § 1367(c)(3), the court **DECLINES** to exercise supplemental jurisdiction

over this claim and **DISMISSES** Mr. Gadsden's state law claim against the City

**WITHOUT PREJUDICE**.

The court will enter a separate final order consistent with this memorandum

opinion.

**DONE** and **ORDERED** this April 28, 2020.

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE